McCALEB, Justice.
 

 This is one of several suits instituted by mineral lessees of the tidelands of this State demanding recognition of certain rights under the mineral leases which have allegedly arisen by reason of an action filed, on December 21st, 1948, in the Supreme Court of the United States by the Federal Government against the State in which the former is claiming a paramount right or title to the leased property. 70 S.Ct. 422. Invoking the provisions of Act 22 of the Extra Session of 1948, plaintiff seeks a judgment against the State Mineral Board and Register of the State Land Office declaring that a number of mineral leases for tidelands of this State, secured by it in competitive bidding, contain an implied condition that, in the event the title of the State is questioned by the Federal'Government, any obligation for payment of rentals (delay or otherwise) is suspended during the pendency of litigation and do not again become effective until a final successful determination or disposition of the suit in favor of the State.
 

 The defendants excepted to the jurisdiction of the court ratione personae and materiae on the ground that the suit was one against the State without its consent.' They also filed an exception of no right or cause of action based upon the provisions of the
 
 *747
 
 mineral leases which were annexed to and made part of the petition. And, forasmuch as none of the allegations of fact contained in the petition was disputed, the parties entered into a stipulation that the exceptions be considered as an answer on the merits so that the judge’s action on those pleas would necessarily he a final disposition of the case.
 

 After a hearing conformable to the agreement of the parties, the judge dismissed the suit maintaining the plea to the jurisdiction ratione materiae and the exception of no right or cause of action. Plaintiff has appealed and defendants have answered, praying for an affirmance and also that the plea to the jurisdiction ratione personae be sustained.
 

 The pleas to the jurisdiction ratione personae and materiae are premised on the same ground — viz., that this is essentially an unauthorized suit against the state and, therefore, not cognizable in the courts. The doctrine that a sovereign may not be sued without its consent is not open to question. State ex rel. Cunningham v. Lazarus, 40 La.Ann. 856, 5 So. 289; State v. Liberty Oil Co., 154 La. 267, 97 So. 438; Lewis v. State, 207 La. 194, 20 So.2d 917. But it is without application where the Legislature has designated an agency to administer State property with power to sue and be sued. Louisiana Navigation Co. v. Oyster Commission, 125 La. 740, 51 So. 706; Seibert v. Conservation Commission, 181 La. 237, 159 So. 375.
 

 The State Mineral Board was created by Act 93 of 1936 as a body corporate with the usual powers incident to corporations including the right to sue and be sued; it was also vested with authority to lease State lands for mineral development and production
 
 [1]
 
 “under such terms and conditions as to the Board may seem proper” (Section 7) and was given supervision of all mineral leases granted by the State (Section 9). Since plaintiff has contracted with the State Mineral Board, it seems manifest that any cause arising under those contracts (mineral leases) would be actionable against the board — for, to say that plaintiff is bound by the leases and yet obtains no enforceable rights thereunder (because the State as the real party at interest is exempt from suit) would provide an avenue for the State to escape its just obligations even though it be contracting in its proprietary capacity. This is exactly what this Court refused to countenance in State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519 and in Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606, 608.
 
 [2]
 

 
 *749
 
 We conclude that the exceptions to the jurisdiction ratione personae and materiae should have been overruled.
 

 The Attorney General, representing the defendants, has advanced a number of theories for the maintenance of the exception of no right or cause of action. But, since we are convinced that the exception of no cause of action is well founded because the mineral leases furnishing the basis of the action do not impliedly authorize a suspension of rentals, consideration of the other arguments will be prescinded. ■
 

 The contracts in suit are ordinary mineral leases executed on printed commercial forms. A cash consideration was paid for each lease by plaintiff “for the right to begin the drilling of a well on the herein leased premises at any time within one year from the date hereof, said sum also being part consideration for Lessee’s right to delay drilling operations under the conditions hereinafter provided.” Following this is the usual provision that, if the lessee fails within a year to begin the drilling of a well, its rights may be extended for an additional twelve months'by the payment of a stipulated delay rental and “In like manner and upon like payments annually, the commencement of drilling operations may be further deferred for successive periods of 12 months each during the primary term of this lease, which primary term is hereby declared to be 5 years from the date hereof.”
 

 It is plaintiff’s contention that these mineral leases imply that, should the title of the State to the tidelands upon which the.leases are granted be attacked by the Federal Government, the delay rentals and all other payments falling due are to be .suspended during the pendency of litigation and that this Court should so declare. This argument is advanced on an alleged equitable premise, the postulate being that, if the State is denied ownership of the tidelands, plaintiff could not retrieve any monies paid under the leases by ordinary suit but would be required to obtain the refund by legislative act.
 

 We find no merit in the contention. In the first place, the application of equity to the mineral leases sought to be reformed (although plaintiff protests vehemently that it is seeking only a declaration of its rights under the leases the effect of the plea, if
 
 *751
 
 granted, would be to supplement and reform the contract) would not be appropriate as they are free from ambiguity and state explicitly the entire agreement of the parties.
 

 Article 1901 of the Civil Code provides that agreements legally made have the effect of law upon the contracting parties and “ * * * can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. * * * ” And, as observed in Moriarty v. Weiss, 196 La. 34, 198 So. 643, 656,
 
 [3]
 
 “It is not the province of the court to alter by construction or to make new contracts for the parties. The duty of the court is confined to the interpretation of the agreements the parties have made for themselves, and, in the absence of any ground for denying enforcement, to give effect to the agreements as made.”
 

 Counsel, nevertheless, insist that plaintiff does not demand an amendment to the original contract but merely an interpretation and that, when properly construed, the Court should declare that there is a tacit condition in the agreement for the right of suspension in the event the State’s title is challenged by the Federal Government. In support of this argument, reliance is placed upon Articles 1761, 1764, 1903 and 1965 of the Civil Code.
 

 An examination of the codal articles cited by counsel readily discloses their irrelevancy to the matter at hand. Article 1761 defines a contract as an agreement by which a person obligates himself to give, do or permit or not to do something express or implied by such agreement and Article 1764 enumerates the rules governing contracts. It declares that it is necessary to consider in every contract “Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, But, here, it is difficult to perceive a good reason for saying that either plaintiff or the State Mineral Board tacitly understood that the delay rentals or other payments provided for under the mineral leases would be suspended if the title of the State was challenged by the United States or any one else.
 

 Article 1903, which deals with the effect of contracts, declares that their obligations extend not only to those matters expressly stipulated but also to everything that by law, equity or custom is considered as incidental to the particular agreement. But there is no suggestion of custom here nor can we discern that there is any equity which demands a suspension of plaintiff’s obligations. At the time plaintiff made the contracts, it well knew that, should it be required to litigate with the State, any
 
 *753
 
 monied judgment it obtained could not be recovered other than by legislative act. If it felt that it needed greater protection because of this, it should have insisted that the stipulation it would now have us imply be expressed in the leases.
 

 The equitable principle professed by plaintiff to be the governing factor in the case is that stated in Article 1965 of the 1Code, which is merely a declaration of the Christian tenet to do unto others as we would have others do unto us. But the flaw in plaintiff’s argument is that the principle set forth in Article 1965 is restricted to cases coming within the rule stated in Article 1964 that “Equity, usage, and law supply such incidents only
 
 as the parties may reasonably be supposed, to have been silent upon from a knowledge that they ■would be supplied from one of these sourc
 
 es(Emphasis ours.)
 

 We think that it would be an obvious fallacy to conclude that the parties to the leases contemplated that, should the State’s title be attacked, plaintiff would be entitled to suspend any and all payments falling due for the period of the litigation.
 

 The obligation of the State under the mineral leases was to deliver the thing and “To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.” Article 2692 of the Civil Code. Plaintiff unquestionably has been given the right of possession and has in no way been disturbed in that right. There is no implied warranty of title by the lessor in a contract of lease.
 
 [4]
 
 See Spence v. Lucas, 138 La. 763, 70 So. 796; Chase v. Turner, 10 La. 19; Tippet v. Jett, 10 La. 359; Nicholls v. Byrne, 11 La. 170; Dennistoun v. Walton, 8 Rob. 211 and Sientes v. Odier, 17 La.Ann. 153.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . For a full discussion of the powers of the State Mineral Board see State v. Texas Co., 205 La. 417, 17 So.2d 569.
 

 [2]
 

 . In the last-cited case the Court said: “The argument that because ordinarily the State as a sovereignty can not' be sued in its courts except with its consent is untenable. It overlooks the fact that while the State possesses legislative, public and governmental power in the exer
 
 *749
 
 cise of which it is a sovereignty and governs its people, it also possesses proprietary and quasi private power conferred upon it not for the purpose of governing its people but for the private advantage of the inhabitants of the State itself as a legal personality. This distinction in the powers of the State was pointed out in the case of State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519. In that case this Court held that when the State executed a mineral lease it was acting in _its proprietary or quasi private capacity and that having accepted the benefits under the lease it could not escape its obligations — among which was the obligation of warranty. And the Court properly allowed the assignees of the lessee of the State to call their lessors in warranty to protect their possession of the'leased premises.”
 

 [3]
 

 . See also Blakesley v. Ransonet, 159 La. 310, 105 So. 354, Wiley v. Davis, 164 La. 1090, 115 So. 280 and American Cotton Co-op. Ass’n v. New Orleans & Vicksburg Packet Co., 180 La. 836, 157 So. 733.
 

 [4]
 

 . Since the decision of this Court in Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, a mineral lease has been placed in-the same category as an ordinary contract of lease. See Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336 and Coyle v. North American Oil Consolidated, 201 La. 99, 9 So.2d 473. Therefore, Article 2557 of the Civil Code, relied on by plaintiff in support of its contention in this case, is not pertinent.