HARDY, Judge.
This is a suit by plaintiff, widow of-Tom Long, Sr., deceased, for herself and as natural tutrix of her seven minor children for the recovery of damages for the death of her said husband allegedly caused by the negligence of defendants. Named as defendants are the Northeast Soil "Conservation District of Louisiana and O. H. Gul-ledge, its employee, who was the driver of the truck involved in the accident which Í9 the basis of this suit. The case was tried before a jury which returned a verdict in favor of plaintiff, individually, in the sum of $5,000 and, as natural tutrix, in the sum of $1,000 for the benefit of each of her seven named minor children. After the verdict, 'but before signing of judgment, an exception of no right nor cause of action was filed on behalf of the defendant, Northeast Soil Conversation District of Louisiana, based upon the ground that said defendant as an agency or subdivision of the State is immune from suits ex delicto without legislative authority, and further that the Legislature had never authorized this particular action. The court sustained the exception and thereafter rendered judgment dismissing plaintiff’s suit against the said defendant, but rendering judgment against defendant Gulledge. From this judgment the defendant, Northeast Soil Conservation District of Louisiana, has appealed. The defendant Gulledge did not appeal and the judgment must therefore be regarded as final with respect to him.
Concededly the only point involved on this appeal concerns the right of action of plaintiff against the Northeast Soil Conservation District of the State of Louisiana, an agency of the said State, in the absence of an act of the Legislature specifically au~ thorieing this action.
The Northeast Soil Conservation District of Louisiana was organized under the provisions of Act 370 of 1938, now incorporated in the Revised Statutes as LSA-R.S. 3:1201 et seq.
Section 3:1208 provides:
“A soil conservation district organized under the provisions of this Part *545 shall constitute a governmental subdivision of this state, and a public body corporate and politic, exercising public powers, and such district, and the supervisors thereof, shall have the following powers, in addition to others granted in other sections of this Part
Among the powers specifically enumerated we find the following in sub-paragraph (8):
“To sue and be sued in the name of the district; * * *.”
As a point of departure for the development of this opinion we think it appropriate to state the well recognized and universally respected constitutional principle that a sovereign cannot be sued in its own courts without its consent. The latest pronouncements on this point are found in Texas Company v. State Mineral Board, 216 La. 742, 44 So.2d 841, and Angelle v. State, 212 La. 1069, 34 So.2d 321, 323, 2 A.L.R.2d 666. Mr. Justice McCaleb was the organ of the court in both cases and we quote from his opinion in the Angelle case:
“The principle that the sovereign cannot be sued in its own courts without the consent of the Legislature is so fundamental that citation of authority would be superfluous. Suffice it to say that it is the universal rule, given full recognition in our Constitution.”
The case cited was an action in tort in which the State of Louisiana and the Department of Agriculture and Immigration were named as defendants. The opinion further stated:
“ * * * by the joinder of the Department of Agriculture and Immigration as a party defendant, plaintiffs did not enhance their rights in any respect as it is merely one of the administrative state departments, see Article VI, Sections 13 and 14 of the Constitution, without separate existence from the State for purposes of suit.” (Emphasis supplied.)
 The State, which is the sovereign power under our theory of government, comprehends and includes administrative departments and agencies, and, as is so clearly and concisely pointed out in the above quotations, the freedom of the sovereign from suit without its consent must be extended to the administrative departments and agencies by and through which the sovereign state performs its governmental functions. But, as is implied in the above emphasized portion of the last quotation, the sovereign state may create agencies having a separate existence for the purposes of suit.
We think therefore that the issue here under consideration may be restated by this query:
“Does the Northeast Soil Conservation District of Louisiana enjoy a separate existence from the State for purposes of suit?”
A number of approaches to the solution of this question may be suggested, but we think they may be substantially narrowed and circumscribed by a process of elimination.
The right of the Legislature to create departments and agencies of government within the limitations of the constitution is beyond question. As a consequence it must be conceded that the right of the Legislature to endow these separate and distinct organisms with certain appropriate powers, responsibilities, rights and attendant liabilities is likewise beyond question. The surrender of the sovereign right of immunity from suit, which is inherent in the State, may be effected and can only be effected by action of the Legislature.
Careful consideration of the instances of the relaxation of this immunity by consent of the Legislature reveals that our courts have consciously, or unconsciously, been lead to a dependence upon the existence of a legislative act specifically authorizing a particular suit against the State or one of its agencies, in actions concerning claims for personal injury, as *546 evidence of the waiver'of immunity from suit. In other words, the modus operandi which has been accepted and followed involves several procedural steps. In the event of injury to the person by a State department or agency or an officer or employee thereof, the person or persons in whom the right of action is vested must procure the enactment of a bill by the Legislature authorizing suit against the State or the department or agency concerned. This legislation is then accepted in the courts of the State as evidence of the waiver by the State of its ■ traditional and established immunity from suit.
But is this the only way in which the Legislature may express the waiver of immunity? We think not, for it seems most reasonable and logical to us to conclude that a Legislature, having the authority to establish an administrative or governmental agency, separate and distinct from the State as the sovereign entity, and having the right to waive immunity, can and does express that waiver when without restriction or qualification it empowers such agency to sue and be-sued.
iWe are thoroughly cognizant of the fact that this conclusion may be construed as being in contravention of judicial decisions of this .and other states. But we feel that any other interpretation would be superficial and predicated upon premises’ which do not bear thorough examination.
Let us look at the jurisprudence. The right of a litigant to sue an agency or department of State which has been vested with the - authority “to sue and be sued” is not open to question. Texas Company v. State Mineral Board, supra; Westwego Canal & Terminal Co., Inc., v. Louisiana Highway Commission, 200 La. 990, 9 So. 2d 389; Seibert v. Conservation Commission of Louisiana, 181 La. 237, 159 So. 375; Saint v. Allen, 172 La. 350, 134 So. 246; Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 169; Louisiana Navigation Company, Ltd. v. Oyster Commission of Louisiana, 125 La. 74, 51 So. 706.
.The courts have repeatedly stated that the liability to be sued does not extend to actions ex delicto; Westwego Canal & Terminal Co., Inc. v. Louisiana Highway Commission, supra; Fouchaux v. Board of Commissioners of Port of New Orleans, La.App., 186 So. 103; Orgeron v. Louisiana Power & Light Co., 19 La.App. 628, 140 So. 282; Kilberg v. Louisiana Highway Commission, 8 La.App. 441.
The right of independently created state agencies and departments to maintain suit in actions ex delicto has been recognized and enforced by our courts, Department of Highways v. Lykes Bros. S. S. Co., Inc., 209 La. 381, 24 So.2d 623, and others.
A careful study of the causes of action and the variation in the language used by the courts in a number of the above cited cases are of such interest as to indicate more detailed comment. The Seibert case was a suit in trespass for the recovery of damages, and a money judgment was rendered in favor of plaintiff. On appeal, in disposing of the issue as to the right to entertain suit against an agency of the State, Mr. Justice (now Chief Justice) Fournet made the following statement [181 La. 237, 159 So. 376]:
“The Conservation Commission of Louisiana is a political corporation vested with the authority to sue and be sued under the act of its creation, Act No. 127 of 1912, and we are, therefore, of the opinion that plaintiff in this case has the right to assert against the Conservation 'Commission of Louisiana and/or its lessees, the alleged action of slander of title and trespass, and to recover rentals and revenues said to have been wrongfully obtained, * (Emphasis supplied.)
Similarly the suit of Louisiana Navigation Company v. Oyster Commission of Louisiana was an action in slander of title and trespass. The same defense was urged and overruled and reference was made to this case in the Seibert opinion.
In Saint v. Allen, supra, the opinion commented on the distinction between the Highway Commission as a legal entity and the State, particularly referring to the commission as a “body corporate” with power *547 as such to sue and he sued. The opinion further compared the commission to the Board of Commissioners of the Port of New Orleans with respect to its relationship to the State, and specifically referred to the holding that such Board “did not enjoy the immunity from the prescription, liberandi causa, enjoyed by the sovereign”, [172 La. 350, 134 So. 249] which principle was established in Board of Commissioners of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127.
In Department of Highways v. Lykes Bros. S. S. Co., Inc., supra [209 La. 381, 24 So.2d 624], the opinion of Mr. Justice Hawthorne contains the following observation:
“The Department of Highways is not a corporation in the true sense. It nevertheless was created by an act of the Legislature and was given the same rights as a corporation, and therefore, for the purposes of this suit, the rules applicable to corporations are applicable to it.” (Quoting Section 8 of Act 4 of 1942 creating the Department of Highways with particular reference to its status as being entitled to all of the rights, powers and immunities incident to corporations and including the right to sue and he sued). (Emphasis supplied.)
In Westwego Canal & Terminal Co. v. Louisiana Highway Commission the opinion of Mr. Justice Rogers contains the following very definite and comprehensive statement [200 La. 990, 9 So.2d 390]:
“It has been held, and now appears to be well settled, that the provisions in Act 95 of 1921, Ex.Sess., whereby the Highway Commission is declared to be a body corporate and that as such it may sue or be sued, does not authorize suits against the commission for the recovery of damages ex delicto.” (Citing the Kilberg and Orgeron cases.) (Emphasis supplied.)
This does not accord with the interpretation in a number of the above cited cases where recovery was permitted against State agencies in actions sounding in tort.
It is evident from a consideration of.the above noted, and other pronouncements, of the several appellate courts of the State that our courts have assiduously avoided giving full effect to what is apparently the plain wording of the phrase “to sue and be sued” in which an unambiguous and unrestricted meaning is implicit. It is as if the courts have twice re-written the phrase-“to sue and be sued” to read:
“1. To sue on any cause of action and to be sued on any action except those arising ex delicto.”
and next:
“2. To sue on any cause of action and to be sued on any action except those arising ex delicto involving claims for personal injury or death.”
There is nothing in the wording of the statutory authority with reference to the creation of these independent agencies, nor have we found any extraneous source, from which there might be inferred a legislative intent to make technical, legal distinctions between actions ex contractu and ex delicto, with relation to suits by and against such agencies.
In support of this extra-judicial activity in the field of legislation, we can point as precedent and authority only to the ages-old, out-moded and undemocratic maxim; “The King can do no wrong”. For a brief but scholarly development of historic background in this connection we refer with unstinted admiration to the opinion of Judge Janvier of the Orleans Court in Orgeron v. Louisiana Power & Light Co., 19 La.App. 628, 140 So. 282.
As is so soundly indicated in Judge Janvier’s opinion, the inflexible rule of immunity has undergone a consistent and progressive relaxation resulting from the developing influences of democratic concepts of political philosophy and the tremendous change in and development of a myriad of governmental functions and activities in the services of the public interest and welfare.
The doctrine that “the King can do no, wrong” is not and never has been the *548 pronouncement of a truth, hut, rather, it has been accepted, in all its falsity, as an enunciation of the power, pre-eminence and .untouchability of the ruling authority, by whatever name it might be called. As a practical consideration it must be conceded that the doctrine of the immunity of a sovereign from suit must and should be maintained. But the issue here presented does not involve this broad, general principle, but is confined to the effect of the express waiver of such immunity with respect to those agencies of government which have been specifically endowed by the Legislature with the authority to sue and the liability to be sued.
We are at a loss to understand what logical argument can be advanced in support of the theory that the use of the words “to sue and be sued” in a legislative act does not mean what it so plainly states. If the words are to be regarded as having any meaning whatsoever, they must be given, the full meaning to which they are entitled by the dignity of definition and construction.
As a matter of practical significance courts are properly cognizant of the fact that our Legislature, at session after session, enacts into law bills authorizing suit against the State and various of its agencies or departments. These enactments do not stand as evidence of the legality of the claims of the beneficiaries thereof, nor as conclusive indication of the right to recovery. These are matters which are left to examination, consideration and pronouncement by the courts of the State. Then why should our courts feel compelled to declare that the action of the Legislature in authorizing a State agency to sue and be sued must be implemented by special legislation in order to support the right of a claimant to proceed with a particular kind of action ex delicto?
One asserted reason is found in Kilberg v. Louisiana Highway Commission, 8 La.App. 441, which case was cited, and, to a considerable extent, relied upon by the court in Orgeron v. Louisiana Power & Light Co., supra. This reason was set forth by the court in the following words [19 La.App. 628, 140 So. 284]:
“ ‘It is evident from other provisions in the Act [Act 95 of Extra Session of 1921 creating the Louisiana Highway Commission, declaring same to be a body corporate and authorizing it to sue and be sued] that the clause subjecting the Commission to the liability to be sued does not confer upon a complainant a right of action whereby the Commission would be eventually deprived and dispossessed of the fund which is necessary for it to exercise its governmental functions and which is dedicated by the Constitution for that special purpose.’ ”
We are impelled to point out the fact that depletion of the funds of this or any other agency can be effected as well by actions ex contractu as by those ex delicto. It is a reductio ad absurdum to reason that by the authority conferred in the words “to sue and be sued” the Legislature intended to permit the use of funds, dedicated or not, in satisfying all judgments which might be rendered except judgments resulting from tort. And, as we have above observed, the courts have even surrendered this position by sustaining actions resulting from tortious acts so long as such acts did not cause personal injury or death.
It is further pertinent in this connection to note that a judgment in favor of a claimant authorized by a special act of the Legislature to sue a State agency or department must be implemented by a subsequent act of the Legislature appropriating funds for the payment thereof.
The ultimate result of such reasoning could lead to the indefensible conclusion that our courts are more zealous in protecting property and satisfying offenses against property than they are in justifying recovery for injury or death to human beings which, as we have so many times so piously proclaimed, cannot be compensated by monetary awards.
We are keenly aware of the general trend of the reasoning which has been adopted in support of decisions of our courts limiting and qualifying the interpretations of. the phrase “to sue and be sued”. Nor do we *549 have the slightest intention of rejecting these holdings or of refusing to accept and follow established legal authority and precedent But we have not found a case in the jurisprudence of this State in which the issue has been as clearly delineated or as forcefully presented as in the instant case.
There is no virtue, per se, in rigid and inflexible adherence to the doctrine of stare decisis. Times change, customs alter, and, despite our human sins of omission and commission, the history of mankind continues to testify to the nearer approach to some constant and unchanging ideals, one of which is the concept of justice, predicated upon humanitarian considerations.
We do not regard our conclusion in this case as overturning an established principle, nor do we consider it as a reversal of established rules and a disregard of precedent, but rather we affirm our conclusion to be an evidence of development in the broad trend of judicial interpretation which strikes down technicalities in the greater service of the enduring principles of justice and equity. We are impressed with the circumstance that our courts 'have contented themselves with rather broad and general pronouncements. As we have above pointed out, although it is generally held that the power to sue and be sued does not extend to suits against a state agency arising ex delicto, the application of this principle has been limited until, finally, it has come to mean simply that such agencies may not be sued for damages for personal injuries. In our opinion such a narrow and illogical conclusion is unwarranted.
For the reasons assigned the judgment appealed from is reversed and set aside, the exceptions of no right and no cause of action are overruled, and there is judgment in favor of plaintiff, Wealthia Miller Long, individually, in the sum of $5,000, and in favor of plaintiff, Wealthia Miller Long, as natural tutrix of her minor children, in the following sums: Mary Delores Long, $1,000; Laura Long, $1,000; Herbert Long, $1,000; Tom Long, Jr., $1,000; Vivian Long, $1,000; Earl Long, $1,000, and Marguerite Long, $1,000, all with interest from date of judicial demand until paid, and against the defendants, Northeast Soil Conservation District of Louisiana and O. H. Gulledge, in solido. All costs are taxed against the defendant, Gulledge.