322 So.2d 866 (1975)
Ralph BOWN, Jr., et al., Plaintiffs-Appellants,
v.
AUSTRAL OIL COMPANY, INCORPORATED, Defendant-Appellee.
No. 5221.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Rehearing Denied December 17, 1975.
Writ Refused February 6, 1976.
*867 Bean & Rush by Warren D. Rush, Lafayette, for plaintiffs-appellants.
Davidson, Meaux, Onebane & Donohoe by L. E. Donohoe, Jr., Lafayette, for defendant-appellee.
Before MILLER, WATSON and CUTRER, JJ.
CUTRER, Judge.
The plaintiffs, Ralph Bown, Jr., L. C. Aycock and E. W. Fort, seek a declaratory judgment recognizing them as overriding royalty owners in leases held by Austral Oil Company, Inc. and an accounting for production thereunder. An exception of no cause of action filed by Austral was granted and plaintiffs' suit dismissed. This appeal by plaintiffs followed. We affirm.
The issues presented by the pleadings are centered around a letter agreement dated March 15, 1954, and executed by *868 Bown, Aycock and Austral. A ¼ interest in said agreement was subsequently assigned to Fort and Aycock. This agreement provides as follows:
 EXHIBIT "B"
 AUSTRAL OIL EXPLORATION COMPANY
NEW YORK OFFICE INCORPORATED TELEPHONE
 630 FIFTH AVENUE 707 SAN JACINTO BUILDING AT-9461
 NEW YORK, 20, N.Y. HOUSTON 2, TEXAS
 March 15, 1954
Mr. Ralph Bown, Jr.
P. O. Box 34
Lafayette, Louisiana
 Re: PR-36 Thornwell Prospect
 Jefferson Davis and Cameron
 Parishes, Louisiana 
Dear Mr. Bown::
You and your associate, Mr. L. C. Aycock, Consulting Geologist of New Orleans, Louisiana, have brought to our attention the Thornwell Prospect. Austral recently secured a lease from The Lacassane Company, Inc. dated March 8, 1954, covering approximately 2354.60 acres of land situated in Townships 11 and 12 South, Ranges 4 and 5 West, Jefferson Davis and Cameron Parishes, Louisiana, subject to a royalty reserved by Lacassane of 1/6 of 8/8. We hereby confirm our verbal agreement with you that the compensation for the services of you and Mr. Aycock in bringing the prospect to us is as follows:
1. Brokerage commission of $1.00 per acre for assistance in negotiating the lease, totaling $2354.60.
2. Austral will assign an overriding royalty to you of 1/48 of 5/6 on the form of the assignment listed as Exhibit "A" attached hereto and made a part hereof.
3. We have negotiated with Albert Bel, David Garrison et al for an assignment of their lease covering Prather lands in Township 11 South, Range 5 West, Jefferson Davis Parish, lying west and north of the Lacassane acreage. Negotiations for such assignment have been unsuccessful to date, but if prior to June 1, 1954, Austral secures an assignment of such lease covering all or portions of the lands therein covered, we will assign to you an overriding royalty of 1/96 of the net interest remaining to Austral after subtracting the royalty and overriding royalty to others, with which such interests may be burdened; provided that if the aggregate burdens of royalties, overriding royalties (including your overriding royalty), and the payments out of production to which such lease (or portions thereof) is subject upon conveyance of interests therein to Austral shall exceed 1/5 (0.200) of all the oil and gas produced from the mineral interests covered by any leasehold interests conveyed to Austral, then the overriding royalty to be assigned to you as herein provided shall be reduced or eliminated so that the net interest to be retained by Austral shall not be less than eighty percent (80%) of gross production.

*869 4. You and Mr. Aycock have agreed that the grantee to be named on the two assignments of overriding royalty mentioned above shall be Ralph Bown, Jr. and that the brokerage commission check shall name Ralph Bown, Jr. as payee.
If this letter correctly expresses your full understanding of the entire agreement between us, please confirm your acceptance thereof by securing Mr. Aycock's signature and placing your own signature on the attached three copies of this letter. An additional copy is enclosed for Mr. Aycock's files.
After we have received the executed copies of this letter with your acceptance noted thereon, we will promptly transmit our check to your order in the amount of $2354.60, and will deliver to you the overriding royalty assignment for the Lacassane lease.
 Yours very truly,
 AUSTRAL OIL EXPLORATION COMPANY
 INCORPORATED
 By(s) Robert S. Moehlman
 Robert S. Moehlman
 Vice President
ACCEPT AND AGREED TO this
16th day of March, 1954.
(s) Ralph Bown, Jr.
Ralph Bown, Jr.
(s) L. C. Aycock
L. C. Aycock
The petition alleges that under this letter agreement plaintiffs are entitled to of 1/48 of 5/6 overriding royalty in all oil, gas and mineral leases, with specified exceptions, acquired by Austral in the "Thornwell Prospect". Plaintiffs further allege that by assignment dated April 21, 1954 Austral transferred to Bown an interest in the mineral lease from the Lacassane Company, Inc., which lease was dated March 8, 1954. A copy of this assignment was attached to the petition.
They further allege that Austral transferred to Bown an interest in a mineral lease from Robert Francis Prather, et al. A copy of this assignment was also attached to the petition. Bown made an assignment of interests to Aycock and Fort, a copy of which is attached to the petition. The petition also alleges that Austral has refused, after amicable demand, to transfer to plaintiffs a 1/48 of 5/6 overriding royalty in numerous other leases set forth in Exhibit "A" and located in the "Thornwell Prospect."
Plaintiffs further aver that they are entitled to judgment decreeing plaintiffs owners of the royalty claimed and for an accounting of all oil, gas and other hydrocarbons produced from or allocated to the numerous leases from date of initial production to the present time.
Alternatively, and in the event that it is found that the royalty interest, to which plaintiffs seek title, is a sublease for which Austral owes rent only, plaintiffs allege that they are entitled to a cancellation of all subleases for which they have not been paid and an accounting is due by Austral *870 for 100% of the production attributable to Austral under said leases.
The issue presented is whether the trial court was in error in granting the exception of no cause of action filed by Austral. In a determination of this issue, the well pleaded facts of the petition are accepted as true along with the exhibits attached thereto.
The plaintiffs contend in argument and brief, even though not pleaded, that the letter agreement is ambiguous, and, as such, a trial on the merits should be had and parol evidence admitted to explain same. Plaintiffs contend that it was the intention of the parties to assign royalties to plaintiffs not only under the Lacassane and Prather leases, but to all leases acquired by Austral in the "Thornwell Prospect".
The basic rules to be observed in the construction and interpretation of contracts may, in substance, be stated as follows:
The intention of the parties is of paramount importance and must be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety.
LSA-C.C. Article 1945 provides that agreements have the effect of law between the parties, who alone can abrogate or modify them, and that the courts are bound to give effect to all contracts according to the true intent of the parties when the language is clear and leads to no absurd consequences.
It is not within the province of the court to alter or make new contracts for the parties, its duty being confined to the interpretation of the agreements between the parties, and in the absence of any ground for denying enforcement, to render them effective. Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841 (1949).
Guided by the above basic rules of interpretation and construction we examine the provisions of the agreement in question to determine its meaning and the intention of the parties.
The opening paragraph relates to the fact that Aycock and Bown brought the "Thornwell Prospect" to Austral and for that reason compensation is due. The Lacassane lease had been acquired by Austral and was described therein as containing 2354.60 acres.
Then follows paragraphs enumerated 1, 2, 3 and 4.
Paragraph "1" provides for a commission of $1.00 per acre "totaling $2354.60." The sum, $2354.60, corresponds to the acreage (2354.60), reflecting that this commission was for the Lacassane lease.
Paragraph "2" contained an agreement by Austral to assign an overriding royalty to Bown of 1/48 of 5/6 on a form attached. It must be noted that the overriding royalty here is designated in the singular, "an overriding royalty", denoting one overriding royalty.
Paragraph "3" concerns the agreement of Austral to assign to Bown an overriding royalty of 1/96 under the Prather lease when it is acquired by Austral under certain conditions.
Again, it must be noted that Austral agreed to assign an overriding royalty under the Prather lease. This denotes a single assignment of said royalty.
Paragraph "4" clearly reflects that the above paragraphs refer to assignments of overriding royalty in only the Lacassane and Prather leases. The paragraph provides that Bown and Aycock "have agreed that the grantee to be named on the two assignments of overriding royalty mentioned above shall be Ralph Bown, Jr. and that the brokerage commission check shall name Ralph Bown, Jr. as payee."
*871 Only two leases and two assignments of overriding royalty were contemplated in the agreement. The only reasonable interpretation of these provisions, reading them as a whole, is that the parties agreed that the compensation due Bown and Aycock would be first $2354.60 commission for the 2354.60 acre Lacassane lease plus 1/48 of 5/6 overriding royalty on the Lacassane lease. In addition, a 1/96 overriding royalty of Austral's net interest in the Prather lease would be assigned if and when it was acquired.
This conclusion is further strengthened by the fact that the parties agreed that "the two assignments of overriding royalty" would be effectuated on a certain form, an unexecuted copy of which was attached to the letter at the time of its execution. An examination of the record reveals that the agreement to make these two assignments was carried out on the form as stipulated in the letter agreement. The Lacassane overriding royalty was assigned to Bown April 21, 1954. (Exhibit "C"). The Prather overriding royalty was assigned to Bown at a later time, July 29, 1954. (Exhibit "D"). Bown, by instrument entitled "Declaration of Interest" and dated January 28, 1955, acknowledged that Aycock and Fort were also owners of ¼ each of the overriding royalties acquired by Bown under the Lacassane and Prather leases.
Applying the rules of construction and interpretation referred to herein, it is clear that the parties intended to assign overriding royalties under the two designated leases, Lacassane and Prather.
The letter and attached form refer to the subject matter in the following manner:
"Re: PR-36 Thornwell Prospect Jefferson Davis and Cameron Parishes, Louisiana"
The contention by appellants that this enlarges the specific provisions of the letter to include all leases that may be acquired by Austral in the "Thornwell Prospect", is without merit. This reference merely reflects the subject matter of the agreement. The specific provisions in the body of the letter are the controlling provisions of same. Such general reference to the "Thornwell Prospect" must yield to the clear language of the letter agreement.
The plaintiffs contend that the unexecuted form of assignment attached to the letter, and its reference to a schedule of leases to be attached, extends the letter agreement to all other leases, renewals of leases or subleases. This contention cannot prevail. The letter agreement expresses the full understanding of the entire agreement between the parties. The unexecuted form attached to the letter did not make any changes in the letter agreement. No mention of, nor reference, was made to any leases other than those discussed in the letter agreement.
Plaintiffs contend that the case of Wurzlow v. Placid Oil Company, 279 So.2d 749 (La.App. 1st Cir. 1973) is very similar to this suit in that it held that the plaintiff there was entitled to assignments of all leases under the "Lapeyrouse Prospect".
Wurzlow is not applicable to the facts herein. The letter agreement therein contained the following provisions:
"This letter is written for the purpose of clarifying our oral agreement regarding your override on new leases taken on the Lapeyrouse Prospect. Also, we think it is good business practice to have such agreements in writing.

"We understand that you are to have a one forty-eighth (1/48th) overriding royalty on any new leases taken by us on the Lapeyrouse Prospect, except leases from the Louisiana Land and Exploration Company and leases from the State of Louisiana.
"If the new leases are not full interest leases, your 1/48th Override will be reduced *872 in the proportion the outstanding interest bears to the interest covered by the lease." (Our emphasis)
The letter agreement in Wurzlow stated that Wurzlow was to have an overriding royalty on any new leases taken by Placid on the "Lapeyrouse Prospect". The term "Lapeyrouse Prospect" was not defined in the letter. The court permitted parol evidence to explain the ambiguous description of the "Lapeyrouse Prospect". We have no such ambiguity here. The parties agreed that the two overriding royalties would be limited to the Lacassane and Prather leases.
The plaintiffs also argue that they are entitled to an assignment of overriding royalty under the leases acquired by Austral from Lacassane after the 1954 lease expired by its own terms. This argument is put to rest by the court in the case of Wier v. Glassell, 216 La. 828, 44 So.2d 882 (1950). The court, after stating that contracts affecting mineral leases are classified as real rights and incorporeal immovable property, went on to say that:
"Thus, we are here dealing with contracts relating to an incorporeal immovable, the transfer of which under Article 2275 of the Revised Civil Code, `must be in writing'."
As to the effect of the expiration of a lease upon owners of an overriding royalty interest the court held as follows:
"The overriding royalty reserved by the plaintiff in the present case was a right created by the lease in which he was the lessee and which he assigned to the defendant. It depended on the continued existence of that lease to which it was an appendage. It could have no greater life than the lease itself and consequently upon the termination of the lease it became extinguished and the defendant was at liberty to deal with the owners of the property and obtain new leases either in his own name or through an agent. The allegation in plaintiff's petition that in respect to some of the leases subsequently obtained by Fritz Muller, Muller was acting as defendant's agent, adds nothing to his right or cause of action."
We conclude that the trial judge was without error in granting the exception of no cause of action and dismissing plaintiffs' suit. The letter agreement is free of ambiguity, contains the entire agreement between the parties, only applies to overriding royalty interests in the Lacassane and Prather leases agreed upon and not to any subsequent leases, renewals of leases or subleases obtained by Austral in the "Thornwell Prospect".
For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiffs-appellants herein.
Affirmed.