FOURNET, Justice.
 

 This is a suit by the owner of certain property fronting on the Mississippi river against the Conservation Department of the State of Louisiana and its lessee, O. O. Ogden, Inc., seeking to recover damages for the alleged wrongful removal of sand and gravel from what is known in this case as the St. Maurice Bar, claimed by the plaintiff to be batture, or alluvion, and forming a part of his property. He prays for judgment against the de
 
 *240
 
 fondants, in solido, as cotrespassers; and also: First, that he be recognized as the owner of the batture or alluvion in question; second, that defendants be decreed to be trespassers thereon and slanderers of his title; and that they be ordered to desist from further trespassing upon his said property; third, that defendants be condemned to pay plaintiff damages for the wrongful conversion and appropriation of his property, and, in the alternative, that the Conservation Commission be required to account to him for the amount of royalties and rent received from the said lessee, and pay legal interest and costs.
 

 The first defense is that this is in fact a suit against the state of Louisiana involving the title to the bed of the Mississippi river, and, therefore, the court is without jurisdiction to entertain such a suit. The second defense is that plaintiff’s petition does not state a cause or right of action. The third defense involves the merits, and is that the place from where the sand and gravel were removed (St. Maurice Bar) is not a part of the batture or alluvion belonging to the riparian owner, but a part of the Mississippi river bed," the title of which is vested in the state of Louisiana.
 

 The trial court overruled the exceptions to the jurisdiction and of no right or cause of action and on the trial of the case on the merits rendered judgment in favor of the plaintiff, holding that the property involved is batture, and recognizing plaintiff’s possession and ownership thereof; that defendants committed trespass upon plaintiff’s property and slandered his title to said batture, and ordered defendants to desist from further trespassing on the property or slandering plaintiff’s title to said property; and further gave judgment against the defendant the Conservation Commission of Louisiana as follows:
 

 “It is further ordered, adjudged and decreed, that there be judgment herein in favor of the plaintiff, Josiah William Seibert, and against the defendant, Conservation Commission of Louisiana, recognizing and decreeing that the said Conservation Commission of Louisiana has received in rents and royalties for sand and gravel which were appropriated and removed from said batture the sum of $4,258.33, and that the said defendant, Conservation Commission of Louisiana, is for these reasons indebted unto the plaintiff, Josiah William Seibert, in that amount, that is, the sum of $4,258.33, to make full restitution for the rents and royalties wrongfully received by said defendant in the premises.”
 

 The defendants have appealed from the said judgment, and the plaintiff has answered the appeal and asked that the judgment be reformed so as to read as follows:
 

 “That there be judgment herein in favor of the plaintiff, Josiah William Seibert, and against defendant, Conservation Commission of Louisiana, in the full sum of $4,258.33, with legal interest thereon from judicial demand until paid, and all cost of the present suit.”
 

 The principles of law governing this suit are almost identical with those involved iii the case of the Louisiana Navigation Co., Ltd., v. Oyster Commission of Louisiana, 125 La. 740, 51 So. 706, 710. In that case the plaintiff asserted its title to, and the posses
 
 *242
 
 sion of, certain lands in the parish of St. Bernard which formed the lower part of a peninsula, which projected into waters constituting Mississippi Sound and the Gulf of Mexico: The plaintiff alleged that the Oyster Commission of Louisiana and his alleged licensees (or lessees) were slandering its title and trespassing upon its property, carrying away oysters and shells therefrom.
 

 In that case the counsel for the Oyster Commission filed an exception of no cause or right of action and relied in support thereof on the following grounds:
 

 First, “This being a suit to test the title of lands claimed both by the plaintiff and the state, the Oyster Commission, being merely a department of the state government charged with certain functions, cannot stand in judgment in a suit concerning the title, that belonging to the state; and the state, therefore, is the only party who could try this question with ,the plaintiff.”
 

 Second, “that the submerged lands are not included in plaintiff’s patents and that, having exhibited those muniments of title, as part of its allegation of possession, as owner, plaintiff has put itself out of court.”
 

 The court in that ease concluded that plaintiff’s petition did disclose a cause of action which in effect meant that the Oyster Commission (now the Conservation Commission of Louisiana) could stand in judgment and necessarily recognized the jurisdiction of the lower court to try the same.
 

 This court has held that the Louisiana Highway Commission was a distinct legal entity apart from the state. Saint v. Allen, 172 La. 350, 134 So. 246. In the case of Booth v. Louisiana Highway Commission, 171 La. 1096, 133 So. 167, this court sustained the right of a eitizen to maintain an action against the Highway Commission for the actual value of dirt which had been appropriated by a contractor in carrying out a building project with the commission, and, in the latter case, the court cited numerous cases where it had recognized the right of individuals to sue agencies of the state, such as the Board of Levee Commissioners, Police Juries, etc., for damaging private property.
 

 The Conservation Commission of Louisiana is a political corporation vested with the authority to sue and be sued under the act of its creation, Act No. 127 of 1912, and we are, therefore, of the opinion that plaintiff in this case has the right to assert against the Conservation Commission of Louisiana and/or its lessees, the alleged action of slander of title and trespass, and to recover rentals and revenues said to have been wrongfully obtained, and, accordingly, the trial court properly overruled the exceptions and entertained jurisdiction of the cause.
 

 The first question that presents itself on the merits of this case is whether or not St. Maurice Bar, which fronts on the property of the plaintiff’s estate, is batture, or alluvion, belonging to plaintiff as a riparian proprietor.
 

 Articles 455, 457, and 509 of the Revised Civil Code of Louisiana read as follows:
 

 Article 455:
 

 “The use of the banks of navigable rivers or streams is public; accordingly every one has a. right freely to bring his vessels.
 

 * * *
 

 
 *244
 
 “Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands.”
 

 Article 457:
 

 “The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time.
 

 “Nevertheless on the borders of the Mississippi and other navigable streams, where there are levees, established according to law, the levees shall form the banks.”
 

 Article 509:
 

 “The accretions, which are formed,successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion.
 

 “The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use.”
 

 It is the well-settled jurisprudence of this state that the contiguous riparian proprietor owns the bank of the liver attached to his property, and this includes the alluvion or batture, and that the banks of rivers and/or streams is the land between the ordinary high-water mark and the ordinary low-water mark. What is the ordinary low-water mark of the ¿Mississippi river? The levee •of the Mississippi river, by statute, is designated as the ordinary high-water mark. State v. Richardson, 140 La. 329, 72 So. 984; Wemple v. Eastham et al., 150 La. 247, 90 So. 637; Pizanie v. Gauthreaux, 173 La. 737, 138 So. 650; Smith v. Dixie Oil Co., 156 La. 691, 101 So. 24; Boyce Cottonseed Oil Manufacturing Co. v. Board of Commissioners, 160 La. 727, 107 So. 506.
 

 The next question that presents itself is: What is the ordinary low-water level of the Mississippi river in front of the plaintiff’s property?
 

 There is considerable dispute between the plaintiff and the defendant as to the proper manner of determining the ordinary low-water mark. Plaintiff, accepting the method of arriving at that conclusion adopted by the engineers of the Mississippi River Commission, has computed the ordinary low-water mark by taking the lowest depth to which the water recedes in each year over a period of forty-three years and then adopting the average over that period of time as the low-water level. Two engineers of the State Board of Engineers testified that the correct and customary way of computing the ordinary low-water mark was to take the daily average of the low-water stage of the river during each year and compute the average low-water mark therefrom and then taking the said computed or averaged low-water mark of each year and averaging it over a period of forty-three years.
 

 Under plaintiff’s contention from the records of the Mississippi River Commission (Mississippi River Commission way of computation) the land in question would be batture or alluvion. On the other hand, under the State Board of Engineering method of computation, it would be considered a portion of the river bed of the Mississippi river. Which is correct and most reasonable in this partieu
 
 *246
 
 lar instance is a matter of considerable confusion. We therefore resort to lay testimony which we find to have been used in connection with all previous litigation of this nature.
 

 The testimony of the witnesses who lived in the vicinity is to the effect that during the low-water stages of the river, the place where the gravel and sand were taken from by O. O. Ogden, Inc., lessee of the Conservation Commission of Louisiana, is above and out of the water during the low stages of the river at low-water season. The defendants did not introduce any countervailing proof. The trial judge accepted the testimony of plaintiff’s witnesses. A reading of the testimony shows that they were apparently well informed.and gave accurate information. Therefore, without deciding whether the Mississippi River Commission’s or the State Board of Engineer’s manner of computation is correct, it is sufficient to say that the evidence preponderates in favor of the plaintiff that the land in question was alluvi■on or batture and not river bottom.
 

 As to the reformation of the judgment, we find the trial judge’s decree to be very .accurately and correctly worded and is in accordance with the prayer of the plaintiff’s petition. It appears, however, that the judgment of the lower court fails to give plaintiff legal interest which is due him from date of .judicial demand. Revised Civil Code, art. 1938. It is'not necessary to write into the judgment that the costs are due the plaintiff ■by the defendants. Article 157 of the Code of Practice of Louisiana.
 

 It is therefore ordered, adjudged, and descreed that the judgment appealed from be amended so as to add 5 per centum per annum interest on the principal amount of the judgment referred to, from judicial demand until paid, and that as thus amended it is affirmed.