DENNIS, Justice,
dissenting.
I respectfully dissent.
The constitution declares that lands and improvements actually used or destroyed for levees or levee drainage purposes “shall be paid for as provided by law,” with the exception of “batture or to property the control of which is vested in the state or any political subdivision for the purpose of commerce.” La. Const, art. 6 § 42 (1974). Previously, the constitution had provided that all lands and improvements actually used or destroyed for levee or levee drainage purposes, “shall be paid for at a price not to exceed the assessed value of the preceding year; provided, that this shall not apply to batture, nor to property the control of which is vested in the state or any subdivision thereof for the purposes of commerce.” La. Const, art. 16 § 6 (1921). Under Article 665 of the Civil Code lands fronting navigable rivers are burdened by a servitude of public use for the construction and maintenance of levees.
For purposes of interpreting article 665 of the Civil Code and Article 16, Section 6 of the 1921 Constitution, this court has consistently defined batture as the area between ordinary low and ordinary high stage of the water of a navigable river. Boyce Cottonseed Oil Mfg. Co. v. Board of Commissioners, 160 La. 727, 107 So. 506 (1926); Maynard v. United States, Through U.S. Corps of Engineers, 587 F.2d 788 (5th Cir.1979). Therefore, levee boards are bound to pay an indemnity for land between the ordinary high water mark and a levee actually used or destroyed for levee purposes. Boyce Cottonseed Oil Mfg. Co. v. Board of Commissioners, supra; See also Pruyn v. Nelson Brothers, 180 La. 760, 157 So. 585 (1934); Ward v. Board of Levee Com., 152 La. 158, 92 So. 769 (1922); Mithoff v. Town of Carrollton, 12 La.Ann. 185 (1857); De Ben v. Gerard, 4 La.Ann. 30 (1849). This interpretation of “batture” for such purposes has been adopted by the United States Supreme Court. General Box Co. v. United States, 351 U.S. 159, 76 S.Ct. 728, 100 L.Ed. 1055 (1956); 2 Yiannopoulos, Property § 89.
A river consists of three things: “the water, the bed, and the banks.” Morgan v. Livingston, 6 Mart.(O.S.) 19, 229 (1816); 2 Yiannopoulos, Property § 84. The water and bed of a navigable river are public things, whereas the banks are private things subject to public use. Id. The word “bed” is not defined in the Louisiana Civil Code, but according to necessary implication the bed is “the land covered by the water in its ordinary low stage.” Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922); 2 Yiannopoulos, supra.
Previously, in cases involving delimitation between bed and bank, this court has rejected methods involving arithmetical water level averaging and held that the testimony of the witnesses who lived in the vicinity is to be favored over such abstract mathematical measurements. Seibert v. Conservation Comm. of La., 181 La. 237, 159 So. 375 (1935). The same problems presented by arithmetical averaging to determine the ordinary low water mark in Seibert are present when using statistical averaging to determine the “ordinary high water mark” as is required in this case. In summary, the fallacies and frailties involved in arithmetical expert data are as follows:
* Peak flow and flood stages have historically been excluded in Louisiana when determining the proper demarcation of the bank of the river. Boyce Cottonseed Oil Mfg. Co. v. Board of Commissioners, supra; Wemple v. Eastham, supra.
*422 * This court has never accepted arithmetical computations of water levels to determine the low or high water mark. Statistical averaging techniques are only-appropriate when determining the high tide line of waters subject to tidal influence. To determine the ordinary high water mark reference must be had to the physical characteristics of the banks and bed of the water body as determined by physical evidence or witness testimony. Maloney, The Ordinary High Water Mark: Attempts at Settling An Unsettled Boundary Line, 13 Land and Water L.Rev. 465, 467 (1978).
* There is an inherent danger in relying on expert witnesses, even those in good faith, who are free to select which peaks to include and exclude, the number of days and years that are included in the average, and the duration of the levels included in the calculation. The court in Willis v. U.S., 50 P.Supp. 99 (S.D.Va. 1943) reasoned that arithmetical averaging “would be inappropriate because any result reached would depend upon a time period and frequency of occurrence arbitrarily selected by the individual analyst. While useful for engineering purposes, the statistical averaging approach was ‘utterly unreliable as a means of determining the respective rights of the United States and the riparian property owner.’” Id. at 101; See Maloney, supra at 494-98.
⅜ The problem created if statistical averaging is recognized as the method for determining the high water mark is a battle of experts. The court in Seibert, confronted with conflicting expert testimony based on arithmetical averaging, expressed the problem: “Which is correct and most reasonable in this particular instance is a matter of considerable confusion. We therefore xJesort to lay testimony which we find to have been used in connection with all previous litigation of this nature.”
* A high water mark determined by statistical averaging is an artificial, abstract line that may have no relationship with the actual “ordinary” high water mark.
* The lay testimony in the record indicates that the water does not always reach or ordinarily reach the 11 foot line.
* To further elaborate on the inherent problems with statistical averaging, one reasonable interpretation of the statistics presented by the defendant, Plaque-mines Parish Gov’t, indicates that the 11 foot line was not reached at any time in 9 of the 13 years covered in the survey. This shows that, given enough data and discretion, a good statistician can prove one side of a proposition as easily as the other. “We prove what we want to prove, and the real difficulty is to know what we want to prove.” Chartier, Sys-teme des Beaux-Arts.
Accordingly, I believe we should adhere to our former well established jurisprudence and require that the decisions as to the ordinary high water mark be based on the testimony of witnesses in the vicinity. The decision below fails to follow this well established method accepted in our earlier opinions. Otherwise, too much power will be given to governments to use statistics to extend the mark shoreward and take more land from private landowners without just compensation. The constitutional provision which allows the taking of batture without compensation should be strictly construed.