DRAKE, J.
|2In this possessory action, the defendant/plaintiff-in-reconvention, the Parish of West Feliciana (Parish),[1] appeals a judgment in favor of the plaintiffs, Lambert Gravel Company, Inc. and the Succession of Paul A. Lambert, Sr., which granted summary judgment in favor of the plaintiffs, declaring the plaintiffs to be possessors of the property at issue, denied the Parish’s motion for summary judgment, and dismissed the Parish’s reconventional demand with prejudice. For the reasons that follow, we reverse the judgment of the trial court insofar as it grants summary judgment in favor of the plaintiffs; affirm the portion of the judgment denying the Parish’s motion for summary judgment; vacate the portion of the judgment dismissing the Parish’s reconventional demand with prejudice; and remand this matter to the trial court for further proceedings.
FACTUAL AND PROCEDURAL HISTORY
The property at.issue is approximately 72.10 acres situated in West Feliciana Parish and includes two tracts of land: one to the west of Louisiana Hwy. 1263, and one to the east of Highway 1263. The western tract .(Upstream Tract) is bordered by a gravel access road to the north, by the Mississippi River to the south, by Hwy. 1263 to the east, and by Bayou Sara to the west. The eastern tract (Downstream Tract) is bordered by River Road to the north,[2] the Mississippi River to the south, by concrete markers placed by the Army Corps of Engineers to the east, and by Hwy. 1263 to the west. Portions of the property are comprised of the banks of two navigable waterways: Bayou Sara and the Mississippi River.[3]
lain 1950, the Louisiana Department of Highways, now the Louisiana Department of Transportation and Development (DOTD), acquired a right-of-way[4] upon which to construct a state highway through the property, Hwy. 1263. Highway *892 1263 was formerly 'designated as State Route 10, and before that, State Route 85. Currently, Hwy. 1263 is also designated as Ferdinand Street.
The property also includes the former lahding site for the St. Francisville Ferry that plied the Mississippi River between West Feliciana Parish and Pointe Coupee Parish for nearly a century, which is located at the terminus of the Hwy. 1263 right-of-way and the Mississippi River. The ferry landing, was absorbed into the state highway system in the 1950s. The DOTD removed the landing pads and related structures from the ferry landing when the ferry was demobilized in 2011; however, a storage area, boat ramp, and parking area that the DOTD’s predecessor (the Department of Highways) had installed at the site remains on the property. • All of the DOTD’s rights and interest in the former ferry landing area were transferred to the Parish in January 2012.
Paul A. Lambert, .Sr. allegedly began possessing the property in the late 1950s. In 1987,' Lambert, Sr. donated a portion of the property to, the Parish for the construction of a commercial boat ramp, and in 1988, Lambert, Sr. granted a servitude to the Parish fo.r the use of the boat ramp.
In 1998, Lambert, Sr. leased two acres of the property to the Parish for the construction of a commercial river boat landing site for a five-year term. Pursuant to that agreement, the Parish placed movable concrete' barricades on the property. In 2003, Lambert, Sr. extended the lease for an additional five years, through the first day of October, 2008. In 2008, Lambert, Sr. extended the lease for an additional year, through the first day of October, 2009. In 2009, Lambert, Sr. | ¿extended the lease for an additional five years, through the first day of July, 2014.[5] Pursuant to the 2009 agreement, the Parish re-situated the concrete barricades it had previously placed on the property to delineate a parking area.
Lambert, Sr. died on January 13, 2010. Lambert, Sr.’s sons-Paul A. Lambert, Jr. and Merrick R. Lambert — are the co-independent executors of his succession.[6] Lambert, Jr. is also the president of Lambert Gravel Company, Inc., which has continuously leased the property since 1960 from Lambert, Sr. pursuant to a verbal lease.
In 2011, Merrick Lambert was elected to the Wes,t Feliciana Parish Council. To avoid a conflict of interest, the Succession of Paul A. Lambert, Sr. and Lambert Gravel Company, Inc. terminated the 2009 agreement with the Parish in writing on January 5, 2012. That summer, Lambert, Jr. re-situated the concrete barricades to block public access to and trespassing on the property. In December 2012, the Parish removed the barricades-from the property.
The Succession of Lambert, Sr. and Lambert Gravel Company, Inc. initiated this suit by filing a petition for possessory action and injunctive relief, seeking redress for alleged disturbances of possession of the property.[7] The full extent of the *893 property is depicted in Exhibits A and B to the petition, as follows:
Lots 38, 39, 40, 41, 42 and one-half (1/2) of 38 of Square 4; Lots 27, through 33 and part of Lot 36 of Square 3; Lot 54 of Square 5; 64 feet front by 128 fee situated in depth of Lot 6 of Square 2; 64 fe.et front by 128 feet in depth of Lot 18, four-fifths (4/5) of Square 2; all of Square 5 including warehouse;
| (¡Lots 266 and 267 of Square 25 and Lot 318 of Square 36 and the North Portion of Lot 319 of Square 36, Situated in Section 43, Township 3 South, Range 3 West, situated in the Town of Bayou Sara, West Feliciana Parish, Louisiana; Lots 21 and portion of Lot 22, 23 of Square 2; Square 10; Square 13; -Lots 94, 96, 96 of Square 8, Lots 276 of Square 26;
Lots'B and C, Lot 14, and eight (8) feet of Lot 15 of Square 2, and a portion of Lots 24 and 18 of Square 2, together with all adjacent lands and accretion related thereto, all in the Town of Bayou Sara; and
All that certain piece, parcel, lot Or lots of land, together with all improvements thereon, all rights, ways, privileges, and appurtenances thereunto belonging or in anywise appertaining, situated in Section 43, Township 3 South, Range 3 West, St. Helena Meridians, Parish of West Felici-ana, State of Louisiana; comprising thirteen (13) acres of land, more or less, being a tract one hundred ten (110) feet in width and running five thousand-two hundred (5,200) feet in length and identified as the Old Town of Bayou Sara Levee; starting on a point at the center of the Illinois Central Railroad right of way on the north of the former Town of Bayou Sara according to the map of W.B. Smith, C.E. dated 1898 thence following the old levee in a southerly direction to the Mississippi River front; together, with and including the old river front levee of Bayou Sara starting at its east junction with the aforedescribed levee being located approximately two hundred (200) feet south:-of Commerce Street, according- to aforesaid map of survey, and running to the right of way of the Louisiana Department of Highways on the West, being the present existing, blacktop highway known as S.R. No. 10 [now Hwy. 1263] and leading to the St. Francisville, New Roads Ferry, together with all land thereunder and adjoining same which belongs- to the public.
The plaintiffs alleged that three actions by the Parish disturbed their peaceable possession of the property: (1) the Parish’s removal, in 2012, of the concrete barricades along a portion of Hwy. 1263 that blocked access to the parking aréa hear the boat ramp; (2) the Parish’s issuance to the plaintiffs of a notice to abate, under its nuisance ordinances, after Lambert, Jr. placed equipment on the property to block access to the-parking area after the removal of the concrete barricades; and (3) verbal- statements made by Parish officials in council meetings | (¡regarding the Parish’s alleged possession and/or ownership of the property, which were published in-newspapers.
The trial court issued a temporary restraining order (TRO) on May 6, 2013, enjoining the Parish from enforcing the nuisance -ordinances, trespassing on the property, encouraging the public to trespass, and otherwise disturbing the plaintiffs’ possession of the property. The TRO was extended to July 24, 2013, and following a hearing, the trial court deferred the plaintiffs’ application for a preliminary injunction. The trial court ultimately granted the plaintiffs’ application for a preliminary injunction on October 27, 2013.
*894 The Parish filed an answer to the plaintiffs’ original, first amended, and second amended petitions for possessory action and injunctive relief. In its answer, the Parish also filed a reconventional demand, praying for: (1) judgment declaring that the Parish had legal possession of the disputed property as a public thing for continuing use of the public; (2) judgment declaring that the cooperative agreements and other leases are absolute nullities because the plaintiffs were never the legal possessors of the property; (3) a full accounting of all funds paid to the plaintiffs under the cooperative agreements and other leases/agreements; (4) damages in tort for trespassing, interfering with public rights of use and enjoyment, and claiming adverse possession of property legally possessed by the Parish/public; (5) compensation for the plaintiffs’ illicit storage of material, debris, salvage materials, and defunct equipment; and (6) attorney’s fees, legal interest, costs, and legal fees, including expert witness fees.
The Parish later amended its answer and reconventional demand.[8] In its amended answer, the Parish asserted several affirmative defenses, including that all or part of the property that the plaintiffs claim to possess is a public thing, Unsusceptible to private possession. In its amended reconventional demand, the Parish prayed for: (1) judgment declaring, and an injunction enforcing, the public’s right to use the property for passage, fishing, boating, and other recreational activities; (2) judgment declaring public things and federal- lands immune from private possession; (3) judgment declaring the Parish possessor of the Hwy. 1263 right-of-way, the former ferry landing site, and the parking area, a permanent injunction requiring the removal of all obstructions and objects placed by the plaintiffs in the parking area, and damages for the plaintiffs’ trespass; (4) judgment declaring that the 1988, 1998, and 2009 agreements executed by Lambert, Sr. and the Parish be rescinded and declared null, an award of damages and the restoration of all public funds expended under the agreements; and (5) any additional relief the Parish may be due.
The plaintiffs filed answers to the Parish’s reconventional demand and first amended reconventional demand.[9]
On July 21, 2014, the Palish filed a motion for summary judgment, arguing that judgment should be rendered in its favor as the plaintiffs could not demonstrate a triable issue as to possession, the propriety of excluding public use of a river bank, or the existence of any disturbance in fact or law, as required to sustain the plaintiffs’ possessory action. In response, the plaintiffs filed a motion for summary judgment on October 16, 2014, arguing that there is no issue of material fact precluding the trial court from maintaining their possession of the property. Both parties opposed the other party’s motion for summary judgment; both parties also filed replies to the other party’s opposition.
Following a hearing on the cross-motions for summary judgment, held May 1, 2015, the trial court granted the plaintiffs’ motion for summary judgment, recognizing and maintaining the plaintiffs’ right to possess the property, and ^ordered the Parish to cease and desist from any future disturbances of the plaintiffs’ possession. The trial court denied the Parish’s motion for summary judgment and dismissed its reconventional demand with prejudice. A written judgment was signed on May 28, *895 2015, which the trial court designated as final pursuant to La. C.C.P. art. 1915(B).[10] It is from that judgment the Parish now appeals.
ASSIGNMENTS OF ERROR
On appeal, the Parish contends that the trial court erred in finding that there was no genuine issue of material fact regarding the plaintiffs’ possession of the property, in denying its motion for summary judgment, and in dismissing its reconventional demand with prejudice.[11] Specifically, the Parish assigns the following as error on appeal:
1.
The trial court erred in holding that the banks of a navigable river can be possessed by someone other than the [r]i-parian [proprietor.
2.
The trial court erred in finding that the Lamberts established a prima facie case as to a disturbance of law or fact of their putative possession of the [property.
3.
The trial court erred in considering conduct which was not alleged to constitute a disturbance of the Lamberts’ putative possession, and in fact which occurred after the last amending petition of the Lamberts was filed, in adjudicating the possessory action below.
J¿4.
The trial court erred in holding that the Parish’s production of 35 affidavits which controverted both the animus and corpus of any purported possession by the Lamberts failed to raise a genuine issue of material fact.
5.
The trial court erred in dismissing the Parish’s reconventional demand where that reconventional demand was not challenged by any motion for summary judgment and no evidence was introduced regarding the claims in that re-conventional demand.
STANDARD OF REVIEW
In this matter, the trial court considered competing motions for summary judgment, ultimately granting summary judgment in favor of the plaintiffs, and denying the Parish’s motion for summary judgment. Under La. C.C.P. art. 1915(A)(3), a judgment that “[gjrants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E),” is a final, ap-pealable judgment.[12] Generally, an appeal *896 may not be taken from the trial -court’s denial of a motion for summary judgment. See La. C.C.P. art. 968. However, it may be reviewed on an appeal of a final judgment in the suit. Gilchrist Const. Co., L.L.C. v. State, Dept., of Transp. and Development, 2013-2101 (La.App. 1 Cir. 3/9/15), 166 So.3d 1045, 1051, writ denied, 2015-0877 (La. 6/30/15), 172 So.3d 1097. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Judson v. Davis, 2004-1699 (La.App. 1 Cir. 6/29/05), 916 So.2d 1106, 1112-13, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167 (citing Landry v. Leonard J. Chabert Medical Center, 2002-1559 (La.App, 1 Cir. 5/14/03), 858 So.2d 454, 461 n. 4, writ denied, 2003-1748 (La. 10/17/03), 855 So.2d 761). Therefore, on appeal, we will consider whether the trial court erroneously denied the Parish’s motion for summary judgment.
A motion for summary judgment’ is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if’ any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.[13] La. C.C.P. art. 966(B)(2) and (C)(1).[14] The sumnlary judgment procedure is favored and “is designed to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966(A)(2). The purpose of the procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (per curiam).
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the ’ motion, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).[15]
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence’or to determine the truth of thé matter, but | n instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. Hines, 876 So.2d at 765. Additionally, courts generally cannot decide credibility issues when entertaining a motion for summary judgment. Hines, 876 So.2d at 769. Furthermore, summary judgment is séldom appropriate for determinations .based on subjective facts of motive, intent, good faith, knowledge, or malice, and should only be granted on such subjective issues when no genuine issue of material fact exists concerning that issue. Monterrey Center, LLC v. Education Partners, *897 Inc., 2008-0734 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232.
A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 766-66.
■An appellate court’s review of a summary judgment ⅛ de novo based on the evidence presented to the trial court, using the- same criteria used by the court in deciding whether a summary judgment should be granted. Kessler Federal Credit Union v. Rivero, 2014-0095 (La.App. 1 Cir. 9/19/14), 153 So.3d 1218, 1221. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Shipp v. Landry, 2013-1673 (La.App. 1 Cir. 5/2/14), 147 So.3d 721, 725.
In this case, the issues raised by the competing motions for summary judgment filed by the plaintiffs and the Parish center on whether the plaintiffs established a pri-ma facie case as to a disturbance of law or fact of their possession of the property.
|iaLAW AND DISCUSSION
Possessory Action
The applicable substantive law regarding the possession of immovable property and actions to maintain possession are set forth in the Louisiana Civil Code and Code of Civil Procedure. Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name. La. C.C. art. 3421. Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess it. La. C.C. art. 3422. To acquire possession, one' must -intend to possess as owner and must take-corporeal possession of the thing. La. C.C. art. 3424.
Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. Corporeal possession must be open, continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476; see also Chevron U.S.A. Inc. v. Landry, 558 So.2d 242, 243-44 (La.1990). The quality of acts required to constitute corpofeal possession depends on the nature of the land-at issue. See Chevron, 558 So.2d at 244.
Constructive possession occurs' when a person holding title to property exercises corporeal possession' over a part of the property described in the title is deemed to have possession over the entirety of the property described in the title as if it had been corporeally possessed by the titleholder. La. C.C. art. 3426.
Civil possession is the retention of possession, after the cessation of corporeal possession, through the maintenance of the intent to possess as owner. La. C.C.P. art. 3660. Thus, through civil possession, possession is presumed to continue unless a disturbance of possession is shown. See La, C.C. art. 3432. A lessee possesses on behalf Of and for his lessor. La. C.C. art. 3429 and La. C.C.P. art. 3660. Further, one who possesses a part’ of an immovable by virtue of title is |, adeemed to have, constructive possession within the limits of the title. In the absence of title, one has possession'only of the area he actually possesses, inch by'inch or possession within enclosures. See Revision Comments—1982, Comment (d) to La. C.C. art. 3426; citing Yiannopoulos, Civil Law Property, §§ 212-214 (2d ed. 1980).
The intent to retain possession is presumed unless there is clear proof of a *898 contrary intention. La. C.C. art. 3432. One’s possession must not be clandestine or equivocal in order to have legal effect. If the possessor seeks to hide his acts from those who would have an interest to know, his possession is clandestine. Possession is equivocal when there is ambiguity as to the intent of the possessor to own the thing. La. C.C. arts. 3435 and 3436; Griffin v. Lago Espanol, L.L.C., 2000-2544 (La.App. 1 Cir. 2/15/02), 808 So.2d 833, 839.
Possession is lost when the possessor manifests his intention to abandon it or when .he is evicted by another by force or usurpation. La. C.C. art. 3433. In the case of eviction, the right to possess is lost if the possessor does not recover possession within a year of the eviction. When the right to possess is lost, possession is interrupted. La. C.C. art. 3434. One who proves that he had possession at different times is presumed to have possessed during the intermediate period. La. C.C. art. 3443.
The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained, in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or -enjoyment thereof when he has been evicted. La. C.C.P. art. 3655. To maintain the. possessory action, the possessor must allege and prove that: (1) he had possession of the immovable property or real right therein at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, | ^unless evicted by force or fraud; (3) the disturbance was one in fact or in law, as defined in Article 3659; and (4) the posses-sory action was instituted within a year of the disturbance. La. C.C.P. art. 3658; Gros v. Boisvert Farms, LLC, 2013-0016 (La. App. 1 Cir. 2/27/14), 142 So.3d 991, 997. Injunctive relief is available to a plaintiff in a possessory action, during the pendency thereof, to protect or restore possession of immovable property or of a real right therein. La. C.C.P. art. 3663(1).
Disturbances of possession that give rise to the possessory action are two kinds: disturbance in fact and disturbance in law. A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment. A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument that asserts or implies a right of ownership or right to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right. La. C.C.P. art. 3659.
In the possessory action, the ownership or title of the parties to the immovable property or real right therein is not at issue. No evidence of ownership or title to the immovable property or real right therein shall be admitted except to prove: (1) the possession thereof by a party as owner; (2) the extent of the possession thereof by a party; or (3) the length of time in which a party and his ancestors in title have had possession thereof. La. C.C.P. art. 3661. The plaintiff may not cumulate the petitory and the possessory actions in the same suit or plead them in the alternative, and when he does so, he waives the possessory action. La. C.C.P. art. 3657. When (except as provided in Article 3661(l)-(3)) the defendant in a pos-sessory action asserts title in himself, in the alternative or otherwise, he |1fithereby converts the suit into a petitory action, and judicially confesses the possession of the *899 plaintiff in the possessory action. La. C.C.P. art. 3657.
Based on these precepts, the plaintiffs had the burden of proving that they had uninterrupted possession of the property for more than a year immediately prior to the time of the alleged disturbance(s) in fact or law by the Parish and. that they instituted this action within a year of the disturbance(s). Therefore, in reviewing the trial court judgment, we must determine, based on the evidence offered by the plaintiffs and the Parish in support of and in opposition to their respective motions for summary judgment, whether there are genuine issues of material fact as to the plaintiffs’ claim. Since the trial court granted the motion for summary judgment filed by the plaintiffs on this issue, we will first examine their supporting evidence.
The Cross Motions for Summary Judgment [16]

Plaintiffs’ Motion for ■Summary Judgment

The plaintiffs filed a motion for summary judgment, a list of uncontested material facts and essential legal elements, and a memorandum. Therein, the plaintiffs argued that there is no issue of material fact precluding the trial court from maintaining them in their possession of the property.[17] In support of.their motion for summary judgment, the plaintiffs submitted the following exhibits:
11B(A)Affidavit of Paul A. Lambert, Jr., and particular exhibits attached thereto;
(B)Affidavit of Mark Forsyth, and particular exhibits attached thereto;
(C)Affidavit of Tobias Ford, and particular exhibits attached thereto;
(D)Copy of the peremptory exception pleading nonjoinder; memorandum in support of exception pleading nonjoinder, filed by the Parish on February 26, 2013;
(E) Copy of the Parish’s answers' and/or objections to the plaintiffs’ first set ■ of interrogatories, requests for production of documents, and requests for admission, transmitted to the plaintiffs on March 11, 2013, and the *900 plaintiffs’ original discovery requests; and ■
(F) Copy of the Parish’s responses to the plaintiffs’, second set of interrog- ■ atories, requests for production and requests for admission, transmitted to the plaintiffs on February 28, 2014,
As noted, the Parish opposed the plaintiffs’ motion for summary judgment, and the plaintiffs replied to the Parish’s opposition.
Lambert, Jr. is the son of the deceased Lambert, Sr., as well as the co-independent executor of the Succession of Paul. A. Lambert, Sr. and the president of Lambert Gravel Company, Inc., which has continuously leased the property from Lambert, Sr. since 1960. Lambert, Jr. attested that since -1960, Lambert, Sr. possessed the entirety of the property as owner and at all times acted consistent with this possession. As “long as [Lambert, Jr.] can remember,” Lambert, Sr. had paid the taxes on the property. Maps obtained from the West Feliciana Parish Assessor’s office show the property designated as “Lambert, Paul A. Sr., et al.”
As discussed above,- a plaintiff in a pos-sessory action may introduce evidence of title-to prove his possession as owner. See La. C.C.P. art. 3661. |17Lambert, Jr. explained that Lambert Sr.’s connection with the property began when he leased portions of property from the Charles A. La-cost family in 1964. According to Lambert, Jr., Lambert, Sr. began his possession of the 'property upon entering into various acts of sale through which he purchased the property from the heirs of Charles A. Lacost in 1967. Lambert, Sr. purchased the. old Town of Bayou Sara protection levee and land under and adjoining it from the West Feliciana Police Jury in 1960.
Lambert, Jr. attested to personal knowledge of the following as Lambert Sr.’s various acts of possession on the property: the construction and maintenance of roadways and work, areas; timber operations; sand and gravel operations; mowed and bush hogged the property; pumped sand onto the property; off-loaded barges and stockpiled materials, in connection with sand and gravel operations; and stored and maintained equipment on the property for decades. Lambert Gravel Company, Inc. has used the property for work in conjunction with its sand and gravel business as well.
Lambert, Jr. averred he had personal knowledge of Lambert Sr.’s execution of numerous agreements, contracts, and leases of the property to various parties, whereby those parties acknowledged Lambert, Sr. as owner of the property. Said parties include C.F. Bean, Inc., the Army Corps of Engineers, Hunt Energy Corporation, Exchange Oil and Gas Corporation, Marquette Transportation Company, Incorporated, Pine Bluff Sand & Gravél Company, and Martin Marietta Materials.
Additionally, Lambert, Jr. attested to the numerous agreements and leases Lambert, Sr. entered into with the Parish. In 1987; Lambert, Sr. donated a portion of the property to the Parish for the construction of á commercial boat ramp. In 1988, Lambert, Sr. granted a servitude to the Parish for the use-of the boat ramp. Lambert, Jr. stated that to the best of his knowledge, the servitude was terminated 1 isas a result of the Parish’s failure to maintain the boat ramp, in accordance with the 1988 agreement.
In 1998, Lambert, Sr. leased two acres of the property to the Parish for , a commercial river boat landing site; specifically, for the “construction, maintenance^] and operation of a convenient landing and boarding facility for commercial passenger vessels” for a five-year term. Pursuant to that agreement, the Parish placed movable concrete barricades on the property. In 2003, Lambert, Sr. extended the lease for *901 an additional five years. In 2008, Lambert, Sr. extended the lease for an additional year. In 2009, Lambert extended the lease for an additional five years.[18] The 2009 agreement provided that “[a]ll improvements made to the property during the term of [the] agreement by [the Parish] shall at [Lambert Sr.’s] option revert to and become the property of [Lambert, Sr.] at no cost or expense to .,. [the Parish] upon termination of this agreement.” Pursuant to the 2009 agreement, the Parish re-situated concrete barricades it had previously placed on the property to delineate a parking area.
Following Lambert Sr.’s death, his son Merrick Lambert was elected to the West Feliciana Parish government. To avoid a conflict of interest, the Succession of Paul A. Lambert, Sr. and Lambert Gravel Company, Inc. terminated the 2009 agreement in writing on January 5, 2012. That summer, Lambert, Jr. attested' that he re-situated the barricades to block public access to and trespassing on the property. In December 2012, the Parish removed the barricades from the property, which sparked the series of alleged-disturbances that led to the filing of Lambert’s posses-sory action.
After the Parish removed the concrete barricades, Lambert, Jr. moved some equipment that was located on the property to the former site of the concrete hflharricades in order to block public access to the property. This led to the Parish’s issuance to the plaintiffs of a notice to abate under its nuisance ordinances for violations including the accumulation of abandoned refuse, junk, abandoned metal, and concrete culvert material and for conditions which provide harborage for rats, mice, snakes, and other vermin. See West Feliciana Parish, Louisiana — Code of Ordi■nances 1977, Art. I, § 11-2(c) and (b). Lambert, Jr. further explained that the plaintiffs’ possession of the property was disturbed by public statements and emails made and sent by parish officials questioning the plaintiffs’ rights to the property and encouraging.the public to trespass on the property. Finally, although not alleged as a disturbance in their petitions for pos-sessory action, the plaintiffs argued in their motion for summary judgment that ■the Parish also disturbed their peaceful possession of the property by asking the State Land Office to revise a state-maintained map, and by claiming to have acquired all or a portion of the property from the DOTD via an Act of Correction to an Act of Transfer and Acceptance.
Mark Forsyth, an expert in analyzing maps and aerial photography, analyzed activity on the property over time. Forsyth created a series of exhibits delineating various acts of Lambert Sr.’s possession of the property, including the creation arid maintenance of private roadways on the property from 1959 to 2012, sand stock pile operations, tirnber operations, shipping and barge activity, and activities related to Lambert Sr.’s leases with the Army Corps of Engirieers and the Parish.
Tobias Ford, a Louisiana professional land surveyor, conducted extensive land survey work related to the property and created a survey of the property, “FORD-2.” After being asked by the Parish to survey the Hwy. 1263 right-of-way, Ford stated that he personally observed that the concrete barricades, placed on the property by the Parish were actually located on property outside of the Hwy. 1263 right-of-way.
|2nIn opposition, the Parish submitted a memorandum, a statement of material *902 facts precluding summary judgment, and various exhibits and their related attachments. The Parish argued that a threshold issue precluding summary judgment in the' plaintiffs’ favor is the property’s classification as a river bank and the identity of the riparian owner entitled to assert a posses-sory action as to the banks of the Mississippi River and Bayou Sara. The Parish averred the ordinary high water mark falls somewhere on the property, and that at least some of the property is a river bank that is “not susceptible to possession by anyone other than the riparian proprietor,” despite the fact that the.plaintiffs’ expert utilized a methodology to determine the ordinary high water mark of the Mississippi River and Bayou Sara that has been rejected by the Louisiana Supreme Court. Specifically, the Parish argued that there is no legal authority for declaring a person possessor of a river bank without also declaring that said person is the riparian owner of the estate adjoining the river bank; however, as this is a possessory action, ownership/title to the riparian estate is not at issue or in evidence.[19] See La. C.C.P. art. 3661.
Furthermore, the Parish argued that the plaintiffs did not meet their burden of proving a prima facie case of possession: since the plaintiffs never enjoyed exclusive possession of the property; the plaintiffs’ acts of possession were not of a type, frequency, or character sufficient to demonstrate possession; and the plaintiffs never manifested their intention to possess the property as owner. | ¾1 Almost every material fact listed by the plaintiffs as uneontested was submitted as unsupported and disputed by the Parish.
To support its arguments in opposition, the Parish submitted numerous exhibits and attachments thereto. The exhibits include thirty-five affidavits from third persons who have used the property for various recreational and commercial activities, including fishing, boat launching, and parking over the years. The affiants stated their activities on the property were never challenged nor did they seek permission from anyone to use the property. The exhibits also include evidence of a 1991 contract between the Parish and Lambert, Sr. wherein the Parish claims Lambert, Sr. disclaimed ownership and possession of the 1988 servitude area.
In reply, the plaintiffs argued that their motion for summary judgment supported their contentions that they constructively possessed the property pursuant to title; that they proved possession within enclosures; that they proved inch-by-inch possession and had maintained civil possession through the present; that all disturbances alleged by the plaintiffs are properly before the trial court; that the Parish’s arguments that the plaintiffs did not consistently possess the property do not contradict *903 the plaintiffs’ possession; and that the classification of the property as a river bank is immaterial to the plaintiffs’ possession.

The Parish’s Motion for Summary Judgment

The Parish, in support of its motion for summary judgment, offered a list of uncontested material facts and essential legal elements and its memorandum. The Parish argued that judgment should be rendered in its favor as the plaintiffs could not demonstrate a triable issue as to possession, the propriety of excluding public use of a river bank, or the existence of any disturbance in fact or law, as required to sustain the plaintiffs’ possessory action. In support of its motion, the Parish submitted the following exhibits:
b.(A) Affidavit of Frank L. Willis, PhD, PE, PLS, and particular exhibits attached thereto;
(B) Affidavit of John Hashagen, former co-Parish Manager, and later Parish Manager, of the West Feliciana Parish government, and particular exhibits attached thereto;
(C) Copy of the text of 1954 La. Acts, No. 313, which appropriated $50,000.00 for the purchase and operation of a ferry boat and landing barges by the State Department of Highways; and
(D) Copy of the text of S3 C.F.R. §§ 322-324 and 328-330 (2011), regarding the Army Corps of Engineers’ permitting guidelines for structures, work, or discharges of dredged materials in the navigable waters of the United States.
As previously stated, the plaintiffs opposed the Parish’s motion for summary judgment, and the Parish replied to the plaintiffs’ opposition.
The Parish re-iterates many of the same arguments presented in its opposition to the plaintiffs’ motion for summary judgment: that a private person cannot utilize a possessory action to prevent the public’s use of a river bank as ownership of a river bank is an accessory right of riparian ownership and thus, a river bank cannot be separately possessed from the adjoining land, and that the plaintiffs failed to prove a prima facie case of possession.
According to Frank L. Willis (a professional civil engineer, land surveyor, and environmental engineer, and an expert in hydrology, geomorphology, water boundaries, land boundaries, navigability, photo-grammetry, and 3D mapping), who generated digital terrain maps of the property, portions of the property at issue, including the área surrounding the former ferry landing, boat launch, and parking area, comprise property that is classified as the bank of navigable waterway.
John Hashagen, former co-Parish Manager, and later Parish Manager of West Feliciana, stated that based on his personal knowledge, the former ferry landing has been used by the public and maintained by the DOTD- since at least 1M1976. Hashagen explained that he personally used the parking area numerous times and witnessed others do so as well, until it was “blockaded” by the placement of concrete barricades in 2012. Following the demobilizing of the ferry landing and transfer of interest in the same from the DOTD to the Parish, Hashagen stated that it had custody and control of Hwy. 1263 and the landing since January 5, 2012, and to the best of his personal knowledge, the Parish had dope nothing to suggest it intended to abandon its possession of the road or the former ferry landing site. In mid-2012, the Parish improved the boat ramp at the former ferry landing site to improve the public’s ability to launch boats on the river. Hashagen explained that the Parish removed the concrete barricades from the property after local citizens complained *904 that the -plaintiffs attempted to close off the parking area and otherwise obstruct the public from accessing the former ferry-landing site and boat launch for fishing and boating.
In opposition, the plaintiffs submitted a memorandum, a statement of contested material facts, and various exhibits and their. related attachments. The plaintiffs argued that the Parish failed to challenge what it called “material and undisputed facts” presented in their motion for summary judgment: that the plaintiffs exercised corporeal possession over the property fronting the Mississippi River; that the plaintiffs’ corporeal possession occurred' within the boundaries described in various acts of sale as well as across the entirety of the property; and that the Parish disturbed the plaintiffs’ possession on multiple occasions. The plaintiffs argued that they had never challenged or attempted to undermine the State of Louisiana or the Parish’s activities conducted pursuant to and within the bounds of the Hwy. 1263 right-of-way. The plaintiffs stated that the Parish’s reference to the former ferry landing site, the boat ramp, and the parking area are attempts by the Parish to “obfuscate the possessory action filed by [the plaintiffs]” as these sites are “never fully defined or depicted with any reasonable clarity.” | ^Furthermore, the plaintiffs argued that the Parish attempted to conflate activities conducted on those sites, located outside of the right-of-way, with activities conducted within the right-of-way. For example, Lambert, Jr. stated in a second affidavit that the general public never consistently used any area outside the right-of-way approaching the former ferry landing site for parking.
The plaintiffs argued that the Parish’s statement that the property is. composed entirely of a river bank is incorrect. The plaintiffs further argued, without conceding that the property is composed entirely of a river bank, that, the Parish’s arguments related to the possession of navigable waterways are irrelevant to the plaintiffs’ possessory action. The , plaintiffs averred that while the banks of navigable rivers are subject to public use incidental to navigation, river banks are private things, which are subject to possession, and the limited public servitude does not preclude possession by a private person. The plaintiffs further argued that according to the Parish’s standards, in order for the plaintiffs to assert possession of the river bank, it must first prove ownership of the adjoining riparian estate. This, the plaintiffs argued, defeats the purpose of the possessory action and technically eliminates any possibility of a private person asserting possession of a river bank. A party claiming river bank possession would be forced to use a petitory action, thereby confessing adverse possession and instituting a proceeding that requires a higher burden of proof..
To support its arguments in opposition, the Parish submitted various exhibits and attachments thereto, including a second affidavit of Lambert, Jr. and the affidavits and deposition excerpts of various Parish officials.
In reply, the Parish argued that the plaintiffs failed to refute the Parish’s legal contentions regarding what it alleges is a “threshold” issue of -the property’s classification as a river-bank. Without adducing evidence that the plaintiffs possessed the riparian estate, the Parish contends that the plaintiffs are precluded | ^from asserting a possessory action, as to the river bank. Furthermore, the Parish argued that the plaintiffs have not and cannot provide any facts sufficient to establish a triable fact as to the existence of any disturbance of their alleged possession. For example, the Parish argued that the situs of the alleged disturbances of the plaintiffs’ pos *905 session occurred in an area that was possessed by the State, and xlater the Parish, which means the plaintiffs cannot prove possession at the time of . the alleged disturbances.

Conclusion

Based on our de novo review of the record, we find there are genuine issues of material fact as to whether the plaintiffs had possession (corporeal, constructive, or civil) of the property quietly and without interruption for more than a year prior to the alleged disturbances.' While the evidence submitted in connection with the plaintiffs’ motion for summary judgment demonstrates ' that the plaintiffs conducted some acts of- possession over the property, the Parish submitted evidence in opposition, which raised material issues of fact regarding the character and extent of the plaintiffs’ intent to possess as owner and said acts of possession. Accordingly, the trial court erred in granting summary judgment in favor of the plaintiffs, recognizing and maintaining the plaintiffs’ light to possess.the property, ordering the Parish to cease and desist from any future disturbances of the plaintiffs’ possession, and ordering the cancellation of the Act of Correction from the public records. We therefore reverse that portion of the May 28, 2015 judgment.
We likewise find that the Parish is not- entitled to summary judgment in its favor as the plaintiffs set-forth sufficient evidence establishing - material- issues of fact as to the Parish’s claims regarding the classification of the property, or a portion therof, as a river bank, making it insusceptible to a private possessory action- divorced from the adjoining, riparian estate. Therefore, we affirm the trial -1 ¡^court’s denial of the Parish’s motion for summary judgment. We vacate the trial court’s dismissal, with prejudice, of the Parish’s re-conventional demand; as amended.[20] We also vacate the trial court’s order that the Parish file a petitory action claiming ownership of the property. We pretermit discussion of any further assignments of error, and we remand this matter to the trial court for further proceedings consistent herewith.
DECREE
For the foregoing reasons, the motions of the parties to. file sur-reply briefs on appeal are hereby granted. Furthermore, the portion of the May 28, 2015 final judgment granting summary judgment in favor of the plaintiffs is reversed; the portion of the judgment dismissing, the Parish’s re-conventional demand, .as amended, is vacated; the portion of the judgment order *906 ing the Parish to file a petitory action is vacated; in all other respects, the judgment is affirmed. We remand this matter to the trial court for further proceedings. All costs of this appeal are equally assessed to the parties.
MOTIONS GRANTED; JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND VACATED IN PART; REMANDED.
Whipple, C.J., concurs in the result, concluding that this case is not appropriate for resolution by summary judgment.
Guidry, J., concurs in the result.
Welch, J., dissents and assigns reasons.
Crain J., concurs in the result and assigns reasons.

. West Feliciana Parish converted its form of parish governance to a home rule charter in 2012. As a result, the West Feliciana Parish Council has replaced the West Feliciana Parish Police Jury as the governing authority for the parish.

. River Road, maintained by the Parish, sits atop a raised embankment just south of the United States Army Corps of Engineers (Army Corps of Engineers) Mat Casting Plant.

. The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. La. C.C. art. 456; Seibert v. Conservation Comm'n of La., 181 La. 237, 243, 159 So. 375, 377 (1935).

. The Department of Highways acquired the right-of-way from the heirs of Charles A. La-cost: Pearl Yokum Lacost, individually and as *892 natural tutrix for her minor son, Charles La-cost; A.L. Lacost; Archie Lacost; and Lloyd Lacost.

. Along with Lambert, Sr,, his children, Paul A. Lambert, Jr., Merrick R. Lambert, Janet Lambert Rinaudo, Pamela Lambert Quijano, and the company, Lambert Gravel Company, Inc., granted the extension of the lease.

. For purposes of this suit, Lambert, Jr. and Merrick Lambert signed a written authorization pursuant to La. C.C.P. art. 3192, naming Lambert, Jr. as the single representative of the succession in any matters involving West Feliciana Parish.

. The plaintiffs filed their first amended and restated petition for possessory action and injunctive relief on January 23, 2013, and *893 their second amended petition for possessory action and injunctive relief on May 6, 2013.

. The plaintiffs opposed the Parish’s motion for leave to file their first amended answer and reconventional demand.

. The plaintiffs also filed an amended answer to the Parish’s original reconventional demand.

. The judgment also ordered the Parish to cancel from the conveyance records of West Feliciana public records an Act of Correction dated June 12, 2013, at File No. 109932, Book 196, Page 766. The judgment further ordered the Parish to file a petitory action claiming ownership of the property within sixty (60) days of the judgment or otherwise be barred from asserting any claim in the future of possession or ownership of the property. See La. C.C.P. art. 3662(A)(2).

. In response to the Parish's reply brief on appeal, the plaintiffs filed a motion for leave to file a sur-reply brief. The Parish then filed a conditional motion in support of the plaintiffs’ motion for leave to file a sur-reply brief. Both sur-replies discuss the property law at issue in this case, which were previously raised by arguments contained in and supported by the record before us on appeal. Therefore, we grant the motions of the parties to file the respective sur-reply briefs. See La. C.C.P. art. 2164; cf. Butler v. L & N Food Stores, 2011-0577 (La.App. 1 Cir. 2/10/12), 91 So.3d 342, 343 n. 1.

.After examining the factors outlined by the Louisiana Supreme Court in R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23, the trial court found that there was no just reason to delay the appeal of its judgment and designated the judgment as final, subject to immediate appeal pursuant to La. C.C.P. art. 1915(B).

.Article 966 was recently amended by 2015 La. Acts, No. 422, § 1; however, the new version of Article 966 does not apply to this case as the amendment did not become effective until January 1, 2016. Here, the pendency of the instant appeal on the effective date of 2015 La. Acts, No. 422 results in the application of the prior version of Article 966 to the instant matter.

. Now, see La. C.C.P. art. 966(A)(3).

. Now, see La. C.C.P. art. 966(D)(1).

. The plaintiffs filed motions to strike the affidavits of John Hashagen and Frank Willis. The Parish filed objections to the admission of the affidavits of Mark Forsyth and Tobias Ford. At the hearing on the competing motions for summary judgment, the trial court noted that the objected-to affidavits, as well as their attachments, would be submitted and considered as part of the motions for summary judgment, albeit over the objection of both parties.

. The plaintiffs also argued that the Parish claimed ownership over parts of the property, which converted their possessory action into a petitory action, thereby judicially confessing the plaintiffs’ possession of the property. See La. C.C.P. art. 3657. In a memorandum ordered by the trial court on this issue prior to the filing of.the cross motions for summary judgment, the plaintiffs stated they had "never asserted ownership, only possession of the [s]ubject [pjroperty.” Further, the plaintiffs stated that they "cannot in good faith provide any evidence that [the Parish] has converted the possessory action into a petitory action. . .[however], [the plaintiffs do] question [the Parish's] continued assertion of title in the State of Louisiana to the extent [the Parish] intends to claim rights to the property through a donation of the right of way....” In the Parish’s memorandum ordered by the trial court on this issue, the Parish stated that it made no claims of ownership regarding the property. At that time, the Parish had not yet filed its original or amended answer and re-conventional demand. Upon review of those pleadings, we find no claims of ownership of the property made by the Parish, only claims of the Parish’s own possession of the property. Based on our de novo review of the record, we agree with the trial court that the Parish did not convert the plaintiffs’ possessory action into a petitory action pursuant to La. C.C.P. art. 3657, and we pretermit any further discussion of this issue on appeal.

. Along with Lambert, Sr., his children, Paul A. Lambert, Jr., Merrick R, Lambert, Janet Lambert Rinaudo, Pamela Lambert Quijano, and the company, Lambert Gravel Company, Inc., granted the extension of the lease.

. As stated previously, the Mississippi River and Bayou Sara are navigable waterways. The. bank of a navigable river "or stream, which is the land lying between the ordinary low and the ordinary high stage of the water, is a private thing that is subject to public use. La. C.C. art. 456. Private things are owned by individuals, who may freely dispose of them. La. C.C.. arts. 453 and 454. In contrast, however, La. C.C. art. 458 categorizes the banks of navigable rivers as a public thing. Accretion formed successively and imperceptibly on the bank of a river or stream is called allu-vion, and it is owned by the owner of the bank. La. C.C. art. 499. Historically, the bank of a river belongs to the owner of the adjacent land, i.e., the riparian estate. See Revision Comments — 1978, Comment (d) to La. C.C. art. 456. The Parish’s argument is that ownership of a river bank is entirely accessory to ownership of the riparian estate; as a matter of law, no one but the riparian proprietor can own the bank. The riparian proprietor is considered at all times to be in constructive possession of the bank, and thus, only the riparian proprietor can assert possessory rights in the bank. We pretermit any further discussion of this issue.

. The plaintiffs argued that the effect of granting summary judgment in their favor precluded the trial court from granting the Parish any relief on its reconventional demand against them. See La. R.S. 13:4231(3) and La. C.C.P. art. 1061(B). Louisiana Code of Civil Procedure article 1031(A) provides that demands incidental to the principal demand may be instituted against an adverse party, a co-party, or against a third-person. The types of incidental demands provided for in the Louisiana Code of Civil Procedure are reconventional demands, cross-claims, intervention, and demands against third parties. La. C.C.P. art. 1031(B). Louisiana Code of Civil Procedure article 862 states that ”[e]x-cept as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.” The plaintiffs made no prayer for dismissal of the Parish’s reconventional demand in their pleadings; however, at the hearing on the cross-motions for summary judgment, the plaintiffs asked the trial court to dismiss the Parish’s reconventional demand as its claims were exclusively centered on the fact of the plaintiffs’ possession. The plaintiffs' argument was that if summary judgment was granted in their favor, the Parish’s reconventional demand essentially became moot!